We'll hear argument next in Case 13-684, Jessenoski v. Countrywide Home Loans. Mr. Frederick. Thank you, Mr. Chief Justice, and may it please the Court. The narrow question in this case is whether the Truth in Lending Act precision provision in 1635a requires borrowers to file a lawsuit to exercise their right to rescind. The answer is no, and the court of appeals should be reversed. For three reasons. The plain language of Section 1635a, the statutory context of 1635, and the longstanding regulatory interpretation by the two agencies who have been charged with administering the provision. I'd like to start with the plain text of 1635a, and we've set out the language in the first page of our addendum to the blue brief, where a couple of things are quite important to take note of. One is that the rescission right, the mechanism that is set forth in the statute, is by notifying the creditor. And that's true whether the rescission occurs within 3 days or 3 years of the closing of the loan transaction. The second thing that's important to point out. Let's talk about the first thing. You say rescission is affected by, okay? It seems to me that it's common usage to, for instance, one could say on election day you vote by going to the precinct and presenting identification. Now, that is not how you vote. That's a preliminary step to your voting, and I think that it's possible to read the by giving notice as to say where that's the only thing you have to do, as it is for the 3-day cancellation rescission, that's the end of it. But where there is something else to be done, where you have to return whatever you have received under the transaction, it seems to me more reasonable to read it as, you know, you vote by presenting yourself at the precinct and offering identification. Well, Congress could have written Section 635A that way, but it didn't. And when it wrote by notifying, even if it was within the 3-year period, Justice Scalia, it also provided that it had to be done in accordance with regulations of the Bureau. And when Regulation Z was promulgated in 1969, the Federal Reserve Bank took exactly the same position that we're arguing now, which is that the notification to the lender could occur in a writing, and they used their regulations to spell out what it is. Scalia, by notifying in accordance with regulations, it seems to me speaks to the manner of notifying, not to the consequence of notifying. And if Regulation Z may indeed say what the consequence is. But I don't think that the statute authorizes Regulation Z to say that. Well, the statute actually does say that in the B provision. Justice Scalia will get to that in a moment. But the point here is that nowhere in 1635A did Congress say you had to file a lawsuit, and nowhere in Regulation Z is there a provision that a borrower has to file a lawsuit in order to rescind. And remember, the definition of rescission is a unilateral cancellation of the transaction. Yes, but at common law, you had to give back what you had received. And you have you are urging that the statute creates a system in which a creditor who has a secured interest, simply because somebody comes up almost 3 years later and says you didn't give me 2 copies of this particular document, I got only 1 copy. And even if that's not true, immediately the secured interest is converted into an unsecured interest. That is a huge difference, and I find it difficult to believe that that's what Congress intended. Well, the language of the statute actually makes that very clear, and so do the regulations. And notably, Justice Scalia, in three places in three successive sentences in 1635A, Congress said the manner of rescission is going to be done in accordance with regulations. The disclosures that need to be done have to be done in accordance with regulations. And there have to be appropriate forms for the obligor to exercise his right to rescind, and that is also set forth in the regulations. So I don't think 1635A could be any clearer that it is notification by writing in accordance with the regulations set forth by the Federal agency.    intended to do. Sotomayor, could you just explain how you think this would play out? So the obligor sends a letter and says I'm rescinding, and then the creditor fulfills its obligations, and then the obligor is required to tender the property? Correct. And what if the obligor says at that point, I don't have it, I've spent it? Okay. And what happens? So the rescission is rescinded? The statute answers that question, Justice Alito, in 1635B, and that's on the second page of the endem to our blue. How does it answer it? It answers the question by making clear that the process that you set forth is what's The very last sentence, which reads, The procedures prescribed by this subsection shall apply except when otherwise ordered by a court. That sentence was added in 1980, 12 years after the Truth in the Lending Act was originally promulgated. And the reason why Congress added that sentence was because there had been case law that raised the problem that you are identifying. So what that sentence is intended to do is to give courts the flexibility to reorder the various provisions or slow things down so that the tenderback actually happens in a way that does — is not unfair to the lender. And we've not found a single case in the 45-year history of this Act where the borrower has gotten any kind of a windfall. We've looked extremely hard at this. But notably, the reason why this precision happens this way, there's a rationale for it. And the rationale is that after the borrower has put forth all this money to get the loan in the first place, unless the borrower can get back those proceeds and have the security of the interest released, it's virtually impossible or extremely difficult to get a refinancing on the property. Kennedy, Suppose the rescission notice is really improper. The borrower had received the two copies. Two and a half years into the loan, it sends to the bank, notice, we're rescinding. The bank sends back a letter saying, you can't rescind because we gave you all the docket. Then nothing happens for a year. And then the — or, say, for five years. Then the borrower sues. I take it at that point, the bank could say a State statute of limitations is run? That's right. But the way that your hypothetical most commonly arises, Justice Kennedy, is in judicial foreclosure States, and that would be where the bank would wait for a period of time before bringing a foreclosure action in court, and then the borrower would assert the rescission as a defense, as an affirmative defense, like the Beach v. Occoquan situation, except that in your hypothetical, the borrower had timely sent the written notification of rescission in time within the 3-year period, and so therefore would have preserved the right to rescind as an affirmative defense. Kennedy So the borrower has to send its notice that it's not — does not agree with the right to rescind within the 3-year period? Yes, that's right. Under our position, the written notification — Suppose the notice comes 3 days before the 3-year period ends and the bank just doesn't have time? No. So the bank, under the procedures in section B, has 20 days in which to pay back the loan proceeds that had been conferred to the borrower. So the way that this works in practice is that the bank takes its 20 days, and if it investigates the loan file and it comes to the conclusion that it has an argument that the borrower has improperly sent a notice of rescission, it does what the bank did here, which is to write a letter back and say we contest or we dispute your rescission. The question is, in this case, is did the Jasinovskys timely send their written notification of rescission in the face of that? And our position is that the court's position is wrong. Mr. Frederick, the bank, as soon as it receives the notice of rescission, one of the benefits for people who don't want to pay a mortgage is that it suspends the mortgage payments, correct? That's correct. All right. So isn't it in the banks — Although, if I could interrupt — Isn't it — I'm sorry. If I could interrupt you, many times borrowers will send their rescission notice and actually continue to pay. But for those who don't, the bank can file a declaratory judgment suit. That's correct. And even for the ones who do, they could do the same thing. That's correct. And in nonjudicial foreclosure States where, to go back to your hypothetical, Justice Kennedy, there's a harder wrinkle on this. A bank would not need to go to court to foreclose on the borrower. It would simply do the notices provided under State law and have the sheriff, you know, send a — provide a notice saying we're going to sell your house. And in that case, the burden really shifts to the borrower to go to court to get a temporary restraining order or a preliminary injunction to say, hey, I sent my rescission notice, the bank is ignoring it, please don't sell my house out from under me. And that kind of procedure makes a lot of sense in the real world where these kinds of written notifications provided by the expert agency charged with administering it create a simple process by which the rights of both sides can fairly be determined. That's been the way this statute has been understood up until very recently when the circuit conflict developed really in response to this Court's decision in Beach. In Beach, it was simply reading the plain language of 1635F. And if I could turn to that, it's on page 4. Ginsburg, before you do, Mr. Frederick, you are recognizing that the only recourse the lender has, if the borrower is claiming something that is baseless, the only recourse is to bring a declaratory judgment action. Frederick, no, actually, I don't agree with that, Justice Ginsburg. The lender has several recourses. First, it notifies the borrower that it doesn't agree with its position about the rescission. And then it depends really on whether we're in a judicial foreclosure State or a nonjudicial foreclosure State. In the judicial foreclosure States, the next thing that's likely to happen is that the bank would go to State court and file a foreclosure action, at which point the validity of the rescission notice would be the first issue that would be decided by the Court in determining whether or not the foreclosure was proper to begin with. But if we're in a nonjudicial disclosure State and we're roughly 50-50 among the States in terms of which are which, then we have the problem that I was identifying with Justice Sotomayor, where the buyer is going to have to take the initiative to go to court to get a declaratory judgment that it had he or she had properly rescinded the loan. So why do you think it is that Congress didn't say how we resolve disputes in this context? Well, I think that the answer to that is that Congress expected that this unilateral right of rescission was going to be exercised in a simple way through the written notification, and that what has happened is that the lender was going to agree with the borrower that it was appropriate. Congress couldn't have thought that every time there was a notification, Congress must have thought that there were going to be some cases where the lender and the borrower disagreed. And yet Congress didn't say anything about how those cases would be resolved, and that's a puzzling feature of the statute. It is a puzzling feature, Justice Kagan, and I can't deny that. But I can say that Congress revisited the language of the statute four times after its initial enactment in 1974 and 1980 and 1995 and in 2010, and it never changed the mechanism of rescission that it set forth in the original provision of 1635a. And so when it put in these provisions like expiring the right, which it did in F and it did that in 1974, it provided a termination of the right, which we think dovetails with a. And if you look at the two key linguistic points here, the obligor's right of rescission this is in F now, and I'm on page 4 of the addendum to our blue brief, really tracks the language of right to rescind in a. And when it says in a, this section, the right to rescind in this section, when Congress subsequently enacted F to put the expiration of 3 years, it's mirroring that language when it says the obligor's right of rescission. And then secondly in F, when it says the information and forms required under this in a, where it provides that there are disclosures and forms that are going to be promulgated under the regulations. So in that regard, I think what Congress was trying to get at was to keep the process simple. If there was going to be litigation, as there invariably has, courts would be able to sort that out using what they added in 1980, which is the last sentence of subsection B, which is to give the court some flexibility in determining how to do the payback and the tenderback scheme. Alito, you're reading an awful lot into that section. The procedures prescribed by this subsection, that sentence, the procedures prescribed by this subsection shall apply except when otherwise ordered by a court, doesn't tell a court what to do. It doesn't tell a court what it can't do. That's right. And, Justice Alito, if you read the cases, and I would point you to footnotes 9 and 10 of the State's amicus brief, they set forth in one a long list of State cases and in the other a long list of Federal cases. The way I read them is that these are like mini-bankruptcy proceedings. The – where the lender and the borrower are going into court and they're making arguments about the propriety of the rescission, they're making arguments about how much is owed, they're making arguments about what claims need to go back and forth, and that the court ultimately is making a decision, it tallies up based on the loan proceeds and all the back and forth, who's going to owe what to whom. Sotomayor, does your argument depend on us agreeing with the proposition that the rescission is completed at the time the notice is sent? I think that it – no, but it does depend on accepting the idea that rescission is just cancellation, and then if restitution occurs, which are all the B procedures, those are going to happen after the cancellation. If I could save the balance of my time for rebuttal. Thank you, counsel. Ms. Goldenberg. Mr. Chief Justice, and may it please the Court. We agree with Petitioners that section 1635F is very tightly linked to section 1635A. Section 1635A opens a three-day window for exercising the right to rescind, and if the disclosures and forms that the lender is required to give the borrower aren't given, then that three-day window essentially marches forward in time all the way up to the 3-year mark. What section 1635F does is put a backstop on how far that three-day window can proceed and an endpoint on the exercise of the right of rescission through a written notice. But nothing in section 1635F refers to bringing an action in court, to a cause of action, to any of the language that one would expect to find in a statute of repose. And that provision, I think, can't fairly be described as a statute of repose under this Court's statute of limitations, or a statute of limitations, as this Court has already decided in Beach. That was one of the holdings of Beach. This Court's recent decision in CTS v. Waldberger defined a statute of repose as something that puts an outer limit on the time for bringing an action running from the date of the defendant's last culpable act or omission. And that's not what section 1635 does. It doesn't have any language to that effect. Respondent's position would actually create an anomaly that's not seen under statutes of limitations or statutes of repose, and that would be that in some circumstances they would require the borrower to file a suit before the violation that the borrower was complaining about had even taken place. And that would be in a situation in which the borrower is sending the notice of rescission, say, a few days before the 3-year period runs. At that point, the lender has 20 days to respond and to say whether it's going to accept the notice of rescission as valid and whether it's going to voluntarily comply with the unwinding procedures in section 1635b. The kind of suit that a borrower would bring in that circumstance would be complaining about a violation of section 1635b, that the lender refused to do the unwinding that it was required to do under the statute. But it might not. Kennedy, Suppose the bank thinks that the notice of rescission is just completely baseless. Does it still have to respond within 20 days? Because you can just sit there and wait and be sued? That's right, Your Honor. In our view, an invalid notice of rescission that's not timely has no effect in the world. It has no no no no requirement on the lender to do anything, and you can see that from the language of section 1635b. I'm looking now at 2a of the appendix of the government's brief, which says that when an obligor. Breyer, B-boy. B-boy, yes. When an obligor exercises his right to rescind under subsection a of this section, then the unwinding procedures unfold at that point. If the obligor hasn't exercised the right in compliance with subsection a because it has fallen outside that 3-day window for whatever reason, then I think b isn't triggered and the lender doesn't have an obligation to do anything. Ginsburg. How does that apply in this case, where I take it the lender's position is we're being charged with not providing a second copy, and we did provide a second copy. Therefore, this is a baseless claim. At that point, I think the lender is making the going to have to make a judgment in this case and in other cases about whether it thinks the notice is valid. If the lender guesses wrong, then it may be that it will subsequently be held liable for damages for guessing incorrectly and for failing to follow the unwinding procedures under section 1635b when it should have done so. But that kind of retrospective determination is extremely common in commercial arenas, and commercial actors have to make decisions like that all the time. An insurance company that gets a claim from its insured saying I've been injured and I'm telling you within a certain amount of period after the accident, a certain time period after the accident that I've been injured, please pay me, that insurance company might pay or it might not pay. And if it's wrong about the insured not being entitled to the benefits, then subsequently it may be liable for damages there. Alito, what would you do if you were the lender or the lender's attorney and you have a situation where just before the 3 years expire, the borrower sends a letter and they say, we didn't get two copies, and you look at your file, if you still have the file, and you have a document where they acknowledge that they got two copies. So what do you do? You take your chances on what this would be a jury question down the road, whether you believe them, that they actually didn't get the second copy, or whether they believe your documentation. I think what you would do would depend on the circumstances. Those are the circumstances. I don't think you're going to know a lot more than that. What would you do? Right. In that circumstance, I would certainly start by going to the borrower and trying to work it out privately, which is what I think what Congress primarily intended when it set up this scheme. If I weren't able to do that, it would depend, I think, on whether I thought that the prospect, that that notice of rescission could someday be enforced down the line, that the borrower could go to a court and say, please recognize that I validly exercise my right of rescind, right to rescind, and give me the entitlements that flow from that. It would depend on what I wanted to do. If I wanted to foreclose, for instance, on the property and I needed my security interests to be absolutely rock-solid in order to do that, then I might bring a declaratory judgment action, or I might, in the context of the foreclosure, ask the court to declare that the rescission was invalid. What Section 1635F does is it gives the lender the power to eliminate any uncertainty if it feels the need to do so in a particular case. Before Section 1635F existed, the borrower could rescind basically, you know, indefinitely. It could pop up years later and rescind, and the lender couldn't file a lawsuit before then because there would be no adversity between the parties. They couldn't just file a lawsuit saying, please declare that there can't be rescission. What Section 1635F does is it creates adversity, essentially. The lender now knows that the borrower has exercised the right to rescind or believes that it's done so validly, and now there's adversity between the parties, and if the lender needs to, it's now in a position to bring a declaratory judgment action or some other kind of claim to make the uncertainty go away. So the uncertainty is cabined by Section 1635F. Alitoso, and Mr. Frederick just said that what has happened in a lot of these cases is like many bankruptcy proceedings in State court. Is that rescission? Well, I think what's happened under Section 1635B is that courts have taken that last sentence of Section 1635B as essentially the power to do equity in a particular case. I don't think the unwinding procedures are rescission. I agree with what Mr. Frederick said, that the definition of rescission is the annulment, abrogation, cancellation of the contract. What follows from rescission is a common law restitution under this statute, the restitutionary procedures of Section 1635B. But I think the exercise of the right to rescind amounts to rescission. And again, I think you can get that directly out of the statute, and I'm now looking at the same provision I was referring to before. Section 1635B says in its first sentence, When an obligor exercises his right to rescind under subsection A, then the security interest becomes void upon such a rescission. So it's treating the exercise of the right to rescind as the rescission, as the thing that is canceling or unmaking the contract, and then what flows from that are various entitlements under Section 1635B that are analogous to the kind of restitution that you would get at common law. As I say, I think Respondent's position has a number of anomalies associated with it, and it is not consistent with the purposes of TILA. TILA was enacted to make things simpler and clearer for borrowers who were being confused and duped and didn't fully understand their rights. And what Respondent's position amounts to is that there is essentially a hidden requirement that is not in the statutory language, not in the regulatory language, not in the forms that borrowers get, which come from the agency and which lenders get a safe harbor if they use. So there is nowhere any explanation to the borrowers that they have to file a suit within this period of time to exercise their rights, and that's very hard to reconcile with what Congress was getting at under TILA. Also, to the extent that there is any doubt about the interpretation of these provisions, we do think that deference to the agency is warranted, both with respect to the regulation which was adopted as a result of notice and comment rulemaking. That's an interpretation of the statute that makes a judgment that the right to rescind is exercised the same way in every context, whether it's in the first three days or at the end of the 3-year period, and we think that's entitled to Chevron deference. And if there were any doubt about that, we think the agency's interpretation of the regulation is itself entitled to deference. If the Court has no further questions, thank you. Roberts. Thank you, counsel. Mr. Waxman. Thank you, Mr. Chief Justice, and may it please the Court. When a borrower sends a notice of intent to rescind and the lender disputes that the notice is timely or otherwise valid, then rescission, which is the unwinding of the transaction, will not occur unless and until a court awards it. And, Justice Kagan, in response to your question, TILA does provide how and by when that should be done. Section 1635G provides for an award of rescission, and Section 1635 – I'm sorry, these are all on – F is – G is on page 4 of the appendix to the blue brief. Mr. Waxman, please review what you just said, because as I understand it, the lender has to give the borrower a notice of opportunity to rescind, which says, the borrower may cancel how? By notifying the lender at the lender's place of business by mail or telegram, period. And then two copies of that are to be given, the instruction, use one to cancel the transaction. So it's a form that says it cancels – this notice cancels the transaction. That's correct. And what it also says is that your right to rescind – and here I think we are in agreement with what I think I understand my friend from the government to just say – if a notice of intent to rescind under A is sent in a timely fashion, that is, within the 3-day window, or the 3-day, the follow-up 3-day window if the disclosures aren't provided, then rescission is triggered, the rescissionary process is triggered. But if – and again, I think this is what the government conceded, that if the borrower's notice is untimely and the notice that's provided at closing tells you the periods of time in which it is timely, it doesn't do anything. And after 3 days, that is, within 3 days of the consummation, the question of whether it's timely or not depends upon whether the lender violated TILA at the closing. And where the lender says, as happened here, I am holding your signed acknowledgment that you received these forms, their position, the Plaintiff's position, depends on a construction of the statute that says even if, once that notice is sent, even if it is completely invalid, the security interest is vitiated, the borrower – the lender is required to return all monies paid, you know, except in an instance, I suppose, this is not textual, in which the bank runs in and tries to get a TRO. Kennedy. Kennedy. But that's not the position that the government has. If – let's assume that the notice of rescission is baseless. The documents were received. The Petitioners, as I understand it, can say to the bank, can say, so what? You owe us money. We're doing nothing. We're not giving you your money back. And the bank's rights are protected. Well, that is our position. And when my friend, Mr. Frederick, says, you know, we've never found any case of a windfall under B, the answer isn't because in an amendment in 1995, Congress said that in the last sentence of B that a court can modify this. It's that everybody understands that unless and until the lender agrees that the notice is timely and valid, no rescission occurs. And it happens in the law all the time. Sometimes you're right, sometimes I'm right. And we – and we wait and see who sues first, and you take your chance. And if the bank, if you're the bank and you're wrong, ultimately the borrower is going to get damages, et cetera. That's correct. But you don't get the right to rescission. You don't get a rescission just by filing a lawsuit, either. Right. So under your theory, the right of rescission has to be the award. Well, no, no. You can't guarantee that a court is going to act in three years. There are many State courts where that's just not true anymore. That is not our position, and I don't think the other side has ever cited a case in which we can debate whether this is called a statute of repose, but let's just accept what this Court said in Beach, which is after three years, the substantive right for which the remedy of rescission is available expires. But in Beach there was no notice within three years. Justice Ginsburg, I don't think anybody is disagreeing that everything that the Court said in Beach was not that we're each relying on is dicta, because there was no notice. But my point here is that the underlying right disappears after three years. And the question is, what is that a right to? And it is a right to rescission. And what happens in an instance where the lender says your notice is either untimely or invalid for another reason, is the borrower has to, has three years in order to take some action to obtain an award of rescission, which is exactly the remedy that Congress specifies in 1635G and which is referred back to in 1640A3 and 1640C, which is you can accomplish rescission, that is, and rescission is the right to obtain an award of rescission, and it's at common law and common understanding the return of the parties to the status quo. Ginsburg This isn't at common law. This is the statute and B describes how rescission works under this statute, 1635B. And there's nobody is arguing that Congress didn't tinker with the common law procedure, either in law or equity. The point that I'm trying to make here is Congress said in G what happens in order to accomplish rescission where the lender doesn't agree. Sotomayor Well, Mr. Waxman, I don't know. Roberts That's a very, that's a very, you're putting an awful lot of weight on a tiny one-sentence provision, G, that's called additional relief, that I think it would be very odd if that's where Congress decided to place the provision that tells you what happened, what happens when there's exercise of the right to rescind. Waxman Well, Mr. Chief Justice, I think one needs to understand the context in which that provision was enacted. There was always an understanding from the start, and in fact, the understanding is reflected in subsection C, which establishes a presumption that the required forms were delivered, a presumption that can only apply in a judicial proceeding. Everybody understood that in many, many cases in which the notice was sent after beyond three days after consummation, that there would be litigation about this.   that can only apply in a judicial proceeding. Kagan Well, that seems right, Mr. Waxman, that people understood that there would be litigation, and G is an acknowledgment of that. It's an acknowledgment that there are going to be some suits out there, and it might be a declaratory judgment act or it might be a foreclosure proceeding or it might be a bankruptcy proceeding, in which the question of rescission was going to come up and in which it was going to be adjudicated. And all that G says is that in those cases, the Court can award not only rescission, but damages. But that's hardly a requirement that the borrower brings suit subject, you know, brings suit subject to the F clause of three years. I mean, it's just not the way you would write a dispute resolution provision. Waxman Justice Kagan, the G was intended, and we know this very clearly and I think it's pretty obvious from the language, what had happened in litigation before 1995 was that a that borrower where a lender said, nope, that's not valid, I'm not rescinding. I'm not going to go through the unwinding process of B. The borrowers had a choice of filing a suit for damages under 1640, which has a one-year statute of limitations, or pursuing a in an action for rescission for a court award of rescission. And what was happening that precipitated G was that courts were requiring the borrowers to elect remedies. And what G says is, no, no, no, no, if you are suing for an award of rescission, you can also get relief under 1640. And similarly, they amended 1640a3, which involves a suit for damages, to say that if it is also a request for an award of rescission and you prevail, you get attorney's fees. But every provision in here that talks about a suit for rescission says just that. It's not a suit by the borrower for restitution of a rescission that has already occurred. It's not a suit for a return of monies provided under the loan. It is a suit for restitution, and that formulation had a very, very specific money affiguration for rescission. I'm sorry. That had a completely unexceptional, widespread understanding at the common law. Now, Justice Ginsburg, I'm not suggesting that Congress didn't tinker with procedures under the common law, but this Court has warned again and again that Congress is not presumed to abrogate common law principles, and Congress, when it does so, has to speak directly. So in this instance, for example. Sotomayor, it hasn't spoken directly when it sets out a specific procedure for the parties to follow. It tells out, tells the borrower. With the notice, it tells the lender to take 20 days to say yea or nay. And if it says yea, it has to return the money and the other side has to give the property. So it's spoken utterly clearly about all of those things, and it had also said what happens in the mine run of these late notification cases, that I mean between 3 days and 3 years of the consummation of the transaction, that if the borrower or if the lender says your notice is invalid, no rescission, by any definition, rescission has not taken place, and the borrower's recourse is a suit for an award of rescission, as it would have been under common law. And I think it's important to the government. Am I correct? The government says rescission has taken place if the borrower is right, and it has not taken place if the borrower is wrong. I'm not exactly sure what the government's position is. I did hear the government say that rescission by definition hasn't occurred if the borrower, if the lender disputes the notice. But if the lender disputes the notice, if in fact the notice has been given, the rescission is ineffective, I think that's the government's position. Well, our – I don't know what the government's position is on that, but I know what our position is, which is if the lender receives the notice and says, yep, this is timely, subsection B very specifically, you know, with respect to the common law, explains the steps that have to occur to achieve rescission. There's no question about that whatsoever. But those steps that no court has held, at least since 1974, in a case that neither of my friends have cited, no court has held that just by sending in a piece of paper, valid or invalid, the steps of B have to occur, even where the – even where the – I mean, another typical instance in these cases, and by the way – Well, I take it they do have to occur, or there are going to be damages at least. Let's assume a valid notice of rescission two and a half years down the line. If the bank has the choice, there is a rescission. If the bank says, we are wrong, we have to return the property, it returns the property, it complies with B, it does it within 20 days, there's a rescission. There's no court order, there's nothing. So here's what happens. If there is a rescission. There is a – I think there are two very different things here that address in 1635 G and 1640, and this Court's decision in Beach underscores just exactly how much those two things are different. A borrower – I can generalize it by saying any party to a contract, in this case it's the borrower to a refinancing – anybody can say, hey, you're not performing under the contract and I want to – I want to file a suit to require you to perform, which is the ordinary contract remedy, or give me damages for not having performed, which is what is in 1640A, a suit for damages for not having – for having violated TILA, or at common law and under this statute, there can be a suit for a very different, much more draconian remedy, which is a suit for rescission. And a suit for rescission is what this lawsuit is about. The question in this case is what must a borrower do to obtain resolution of a contested assertion of rescission, and by when must it do it? And the amazing thing is that my friends on the other side say the statute is silent about that point. We say, no, it's not. The statute provides for, maybe not as directly and in sufficient – in a clear exposition in G as one would have hoped to avoid all this litigation, but nonetheless, G has been construed and construed by Congress in 1640A3 as providing the borrower a cause of action for an award of rescission. And in a situation where, you know, the loss – where the lender says, no, we're not rescinding, rescission by any definition has not occurred, and the lawsuit is about whether a court should award rescission. Sotomayor, about the rescission occurring or not, it talks about the exercise of a right. Yes. Sotomayor, but the exercise of the right doesn't mean that the act will have come about. You answered me earlier that a court doesn't have to finish within the three years. You just want to say that it requires the exercise to be a court action, but the statute says something else. It's just notification. Why is that so illogical? I don't understand why it has to be a court action. The exercise of a right is in accordance with the terms of the contract. The question – I mean, the right of rescission means in A, as it says, the timely – I mean, it doesn't define what the right of rescission is. What it says is these are the circumstances in which the borrower has the right to rescind, and those circumstances are if within three days you send a notice of intention to rescind, you have exercised your right to rescind. And what that means is, as it was at common law, you have put to your counterparty an intention to unwind the transaction. And the right, not the – this isn't a case of this – the issue in this case is not how you exercise the right of rescission under A. Sotomayor, you just gave your case away when you said the exercise of the right is when you send the notice. No, but the problem – no, no, don't let me be mistaken here. This is not a question about how you exercise your right to rescind. Everyone agrees that you exercise your right to rescind, that is, to initiate the unwinding process that constitutes rescission by sending a timely and valid notice. Sending that notice does not accomplish rescission. And the question in the question is whether that's the exercise of the right within three years. And the answer is no, because where the lender says, I'm not, I don't agree, and we are not going to accomplish rescission in B, the statute says very commonsensically the party that wants this extraordinary remedy can sue for an award of rescission. And the lawsuit – because the lawsuit is about whether a court should, quote, award rescission, the borrower needs to have a live right of rescission at the time that suit is initiated. Breyer, where does it say all that? I mean, what it seems to say is that a person who borrows some money borrows money. Now, he can tell the lender, I changed my mind. When? Well, within three days or later of the time he sends him certain information. Okay? Three days or later, he has to get the information, so he has three days after that. That's the end of it. And how do you do it? It says you do it by sending him a notice. That's what it says. So send him a notice and you do it. When do you have to do it? You have to do it three days after he sends you certain information, but in no case beyond three years. Now, that's what it seems to say. Your guess, Justice Breyer. Now, how do you get out of that? That's what I don't quite understand. It's like, Justice Breyer, the it. What? When you say doing it, the it that you're required doing is sending the notice. There's no dispute among anybody as to two things. No, that's not what it says at the beginning. It says you shall have the right to rescind by notifying the creditor. Yes, exactly. That is what happens. So it doesn't say that's notice by notifying the creditor. It says the right to rescind by notifying the creditor. I mean, okay. Go ahead. Now, I'm just expressing my you see the problem I have. I read the words and it seems to me it's pretty tough. Let me go. I don't think so. I mean, I think you have to read the words. You have to view the statute as a whole and you have to view it in the context of how rescission, what rescission meant at common law, what rescission means today and how the rescissionary process, what constitutes rescission. There is no dispute among any parties that when a valid, timely notice is filed, that triggers the rescission. It triggers the rescissionary process. But there is also no dispute, as Ms. Goldenberg said, that a borrower's notice doesn't do anything unless the notice was timely and otherwise valid. And after three days, and I do think it's worth pointing out what the three-day period is and what it was meant to be, after three days, that depends on whether the lender violated TILA and where the lender and the borrower disagree. Again, there is a right of action in G and referenced in A3 for an award of rescission. No lender is suing for an award of rescission. And as to the three-day period, let me just say a couple of things about context here and what Congress taught me. Scalia. Could I interrupt before you get that? You don't take breaths between sentences. It makes it hard. As I understand your case, you're drawing a distinction between exercising the right to rescind and obtaining rescission. Doesn't your case hinge on that? Yes. That the notice is simply an exercise of your right to rescind, but rescission does not occur until there is the exchange that the common law. Yes. And correlatively, the fact that an untimely or otherwise invalid notice doesn't do anything. But, Mr. Waxman, if that's right, so exercising the right to rescind is by notice. But then you look at F and it says an obliger's right of rescission shall expire. So I read that and I say, okay, that means when you can no longer exercise your right to rescind, which you've just said, is when you can send notice. So that's what expires after 3 years, your ability to send notice. No, I think it's not. But it says right there, it's the right to rescission shall expire. And you agree that exercising the right of rescission is done by notice. As the Court – no, as this Court explained in multiple places in Beach, all of which are dicta, admittedly, the operation of F not only – is not only to put a cutoff for the last date in which you can send a notice, but it, quote, operates to extinguish the right which is the foundation for the claim. And therefore, it necessarily, quote, limits the time for bringing suit by governing the life of the underlying right. And so in a circumstance in which a notice is sent, which is a notice of intent to rescind under A, if the lender says you're right, and this is the common instances within the 3 days of closing, which I'd like to address, the statute says here's how you unwind it. You go through the procedures in B. If the lender says no, that's not a valid right. It's not timely. The statute gives the borrower not only a cause of action for damages under 1640, but a cause of action for an award of rescission. And because the lawsuit is about whether rescission – the Court should, quote, award rescission, the borrower needs a live right of rescission at the time the lawsuit is filed, and that is our position. Now, as to this 3-day point. Breyer, why that? If you say the rescission doesn't take your – the right to rescission has to be – it expires after 3 years. Well, we don't know if he has a right to rescind until the lawsuit's actually terminated. So he's just – we're just as much in the dark. He happened to have filed a piece of paper called the lawsuit, but the judge is extremely slow. I have known some. And 10 years later, there it is, sitting on his docket, and nobody knows how are we any more – how are we any more enlightened than the day before he filed the lawsuit. Justice Breyer, no one is contending in this case that a statute of repose, that is, a statute provides that an underlying right expires after some date certain, it disables a court from rendering judgment in that case. Of course not. Of course not. But I'm just saying, why pick the date that you file a lawsuit in terms of the validity of the notice, since the filing of the lawsuit no more determines the validity of the notice than it was determined 3 days before? Because 1635F refers to the obligor's right of rescission, and where the obligor has not obtained the rescission that he or she claims he has a right to, he can go to a court for an award of rescission, and the statute tells him, you have to have a live underlying right of rescission before you invoke the court's jurisdiction to do it, which is exactly what happened at the common law in these circumstances. Now, I just want to say that I think, you know, the other side says, well, we're making a big distinction between whether the notice is sent within 3 days or after because somehow nobody could believe that a lawsuit would be filed within 3 days. 1635A doesn't govern when a lawsuit is filed. It governs when the notice of an intention to rescind has to be sent. If there is a dispute about whether that notice is timely or whether it's otherwise valid, for example, it's often invoked in cases where there is a refinancing with the original lender, which this doesn't apply to, or a purchase money mortgage, where this doesn't apply to. If there is a dispute about it, let's say the — I think this has happened so far as we've all been able to determine one time in history where it comes — it certainly comes within 3 days of closing and the lender says, no, no, no, that's 4 days, you're too late. Ordinarily, what Congress and the Board understood is that within the 3-day period, that is, the period that in this borrower-friendly statute where Congress was concerned about borrowers being hoodwinked in high-pressure loans, the statute gives the borrower an absolute right for any reason or no reason within 3 business days to say, you know, I've gone back and I've looked at the disclosures and I've changed my mind. What about the Board? You mentioned the Board. Are you going to say anything about Chevron? There's nothing to say about Chevron in this case. Nothing. The Board's regulations, which are now the Bureau's regulations, speak to how one — you know, what kind of notice is really notice and the exercise of the notice of intent to rescind. It says nothing about what's at issue in this case, which is when a lender disputes that the notice is valid, what and by when does the borrower have to do? Now, the Board, the Bureau, has asserted the position that it's asserted in amicus briefs in this case, but those — that position is entitled, I think as this Court has said, to at best Skidmore deference, and in this case they fail Skidmore deference because their reading is completely inconsistent with the common law, inconsistent with the statute, that is, the provisions of G and F. And in any event, nobody is claiming that the Bureau has any expertise about this aspect of TILA. This isn't the mine run of cases where, you know, what does excessive interest or adequate notice mean. Now, I think it's important to understand that within the — what Congress understood was it was providing borrowers a 3-day period, and in that 3-day period rescission is pretty uncomplicated because the — the — the Board and the Bureau in the regulation that's at issue in this case says to the lender, you may not — you may not disperse the loan proceeds to the borrower or, I think, record your security interest, you may not do it during the, quote, recisionary period, and for such time thereafter until you are satisfied that no rescission will occur. That is the Board's and the Bureau's directive. Now, what happens in this case, in a case like this, is the transaction — the security interest has been recorded, a lot of money has been dispensed, and the question is at that point whether the borrower will, by rescinding, be able to obtain, essentially, an interest-free loan for whatever that period of time is. The Bank of America alone receives between 4,000 and 6,000 of these after-3-year notices every year, and the number has increased every single year since they started recording this. The notion that the — what Congress had in mind is that the lender, who thinks that the notice is invalid, and in most instances the borrower is in default, has to run in, no matter how frivolous this complaint is, and file what would be, among all lenders, tens of thousands of lawsuits a year. Sotomayor, will they have to do that anyway to foreclose? The only time that it's a problem is when the borrower is not paying the loan, but in most of these the borrower stops paying the loan. In most foreclosures — first of all, foreclosures may or may not occur, depending on whether the bank wants it. And many, many, if not most foreclosures, are nonjudicial, so there's no judicial proceeding, and a sale at foreclosure will, by everybody's understanding, vitiate the underlying right. Thank you. Thank you, counsel. Four minutes, Mr. Frederick. Thank you, Mr. Chief Justice. I think if the Court were to accept the bank's position here, the Truth in Lending Act would become even more complicated, because the rules of the road under the statute are pretty clear, that if within three years you've exercised the right by sending the notice, that starts a process. And sure, the bank can contest it, but at least you know by reading the statute that you've got three years in order to exercise that right. And the reason why that right is important is that these disclosures can be very complicated and these transactions can be very complicated. So if you don't get the disclosures within the three-day period of the closing of the loan, you can go into the loan and you can determine this is very complicated, I'm now seeing my rate increase, I'm seeing my payment increase, and I don't really understand all of these various things. Now, the point about the reason why the disclosures are important and the reason why the number of the disclosures is important is really clear if you actually look at the disclosure in this case, and it's at Joint Appendix page 38. It says right to cancel all over. If you want to write the cancel, you can cancel it if you do certain things. It never says file a lawsuit, so the form that the bank used here didn't, you know, preserve its argument that the statute requires filing a lawsuit. It just says you send us the notification of your intent to cancel. Now, importantly, and this question came up — I'm sorry. Why are two of these — I mean, some of the reaction against these lawsuits is premised on the one opposed to two copies. It seems rather immaterial whether you get one or two. You got it. And let me explain that. Four were required in this case. The reason for that is that each person who is on the loan, each borrower, is entitled to get two copies, one so that they can sign it and send it back to the bank and the other one to the bank. So the statute at that point that everybody is operating by the same rules of the road. Why are four necessary? Well, we know from the financial crisis and common sense that when two people are on a loan together, they might not agree when the rubber meets the road and the rate resets or the payment increases or all these other things, and they may decide I have an individual right to rescind that's given by statute and by the original regulations of Regulation Z. So here, if I don't have my forms, I can't exercise my statutory right. And that's why from the very beginning, the Fed said each borrower gets two forms so that everybody knew what the rules were and everybody knew how to exercise them and everybody was on the same page. And so although it is, to be fair, this is not the kind of disclosure violation that would entail an interest rate change or the change in a payment or something like that. The same principle applies for whether or not the borrower's timely exercise of the right. Sotomayor It's always, you know, I don't – I've signed two loans in I don't know how many years, two homes. But I thought at closing I signed something acknowledging the bank kept one and presumably it gave me another. So those were the two loans. Sotomayor Okay. And no, it's actually you get two. And if I could actually correct you. Sotomayor I don't remember sending it back to the bank saying that. Sotomayor Because you probably didn't cancel yours, Justice Sotomayor. You keep the two. Sotomayor But it's not too late. It already is. I've been here six years. Sotomayor But I do want to make one point. There is confusion here on this particular form because what this says, what it says is the undersigned each acknowledge receipt of two copies. It doesn't say the undersigned each acknowledge each receiving two copies. And so you can understand why there is confusion about these kinds of disclosures. And I'll just point out that over the last years during the financial crisis, home loan originators have gotten into a lot of trouble. And within the last two months, this bank paid $5 billion for its shoddy loan origination practices. It is not a surprise why we're here. It is not a surprise why, as Mr. Waxman says, they get a lot of these notifications. Because they were churning out loans so fast, they wanted people to get loans under virtually any circumstances so they could then peddle that to the Wall Street bankers who would then sell them to unsuspecting investors. Now, the last thing I want to say with respect to G is that it doesn't say exactly what he's saying. There's no suit for rescission in G. What it says is that in addition to rescission, which you could read as in addition to the self-help remedy of the exercise of rescission, a court may award. Thank you. Thank you, counsel. The case is submitted.